[Crim. No. 22442. Feb. 22, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT EARL RODER, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Philip M. Brooks, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien and William D. Stein, Assistant Attorneys General, W. Eric Collins and David D. Salmon, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**KAUS, J.**—After a jury trial, defendant Robert Earl Roder was convicted of receiving stolen property (Pen. Code, § 496) and of possession of more than one ounce of marijuana (Health & Saf. Code, § 11357, subd. (c)). On appeal he raises a single issue, contending that in light of the United States Supreme Court decisions in *Ulster County Court* v. *Allen* (1979) 442 U.S. 140 [60 L.Ed.2d 777, 99 S.Ct. 2213] and *Sandstrom* v. *Montana* (1979) 442 U.S. 510 [61 L.Ed.2d 39, 99 S.Ct. 2450], the trial court committed constitutional error in instructing the jury on the statutory presumption of guilty knowledge embodied in Penal Code section 496.[1] We conclude that defendant's claim is well-founded and accordingly we reverse the receiving count.

I

In January 1980, Roder and his codefendant Betty Rayfield shared a residence and were coproprietors of Betty Boop's Junque Shop, a secondhand store located in what was described at trial as the "skidrow" section of Santa Cruz. On January 29, a woman informed police that she had seen many items that had been stolen from her home earlier that month at Betty Boop's. The police obtained a warrant and, the following day, entered and searched the store and defendants' residence, seizing 60 items that were later identified by their owners as stolen property. Thereafter, Roder and Rayfield were charged with receiving stolen property.[2]

At trial, the prosecution introduced evidence as to a number of the seized items but the jury informed the court on returning its verdict on the receiving charges that it had been able to agree only with respect to one item—a used Selmar clarinet. Accordingly, we summarize the evidence only with respect to this item of property.

---

[1]Unless otherwise indicated, all statutory references are to the Penal Code.

[2]During the search of the residence, the police also found some marijuana. In addition to the receiving charges, Roder and Rayfield were charged with possession of marijuana for sale. The jury acquitted Rayfield of the marijuana charge and convicted Roder of the lesser included offense of simple possession of more than one ounce of marijuana. The marijuana conviction is not challenged on appeal.

The clarinet, easily identifiable because it had a severe crack and was enclosed in a unique case, had been stolen from Bart Goldsteen in November 1979. Goldsteen testified that shortly after it was stolen, he made the rounds of the nearby secondhand stores, including Betty Boop's, describing the clarinet to the proprietors. He identified Roder as the person to whom he had spoken at Betty Boop's, and stated that he had never heard from Roder after that.

Kurt Heisig, a musical instrument dealer in San Jose, testified that sometime before Christmas he spoke with Roder about possibly purchasing the clarinet. Heisig stated that he called the San Jose and Santa Clara police to inquire about the clarinet, but did not call the Santa Cruz police because Roder told him that he had already done so.

Testifying on his own behalf, Roder conceded that he might have had a conversation with Goldsteen about a clarinet but stated that he could not specifically remember it, explaining that he had similar brief conversations about lost items with many people every day. Roder stated that he hardly ever personally bought items to sell in the store and that he had not purchased the clarinet; he testified that the first time he saw the clarinet it was already part of the store inventory. He acknowledged that he had spoken with Heisig about the clarinet and that he had not contacted the Santa Cruz police about the instrument. He maintained, however, that he did not know that the clarinet was stolen property.

The defense also put on evidence indicating that much of the store's inventory was purchased at flea markets in the early hours of the morning, and that Betty Rayfield and others who purchased the goods very often did not comply with the store's "official" policy of obtaining full and accurate identification of the seller of the goods. The defense also produced a receipt book which included an entry for an "old clarinet, $20.00," purchased from a "Merle A. Turner, alien identification number A 13084A13"; the entry was signed by Rayfield. The listing did not describe the manufacturer of the clarinet, nor include an address or phone number of the seller and there was no additional information to establish whether or not the entry referred to Goldsteen's clarinet.

At the conclusion of the trial, the court instructed the jury on the presumption of innocence, the definition of reasonable doubt, and the elements of receiving stolen property: "One, that a person receives property which had been stolen; two, that such person actually knew said property was stolen at the time he or she received such property." The court then gave an instruction based on—but not identical to[3]—section 496, subdivision 2, which informed the jury that if it found (1) that defendant was a dealer in secondhand merchandise, (2) that he had bought or received stolen property, (3) that he bought or received such

---

[3]We discuss the differences between the statute and the trial court's instruction later in the opinion.

property under circumstances which should have caused him to make reasonable inquiry that the person from whom the property was bought had the legal right to sell it, and (4) that he did not make such reasonable inquiry, "then you shall presume that defendant[ ] bought or received such property knowing it to have been stolen unless from all the evidence you have reasonable doubt that defendant[ ] knew the property was stolen."[4]

During deliberations, the jury requested clarification of the latter instruction. The court reviewed the four elements noted above, and then explained: "If you find those four things, then the presumption does come into play. [¶] The presumption is that the defendants bought such property knowing it to have been stolen. However it's a presumption—There are two kinds of presumptions. One is a conclusive presumption that if you have the presumption, that's it, you don't go any further. This isn't that kind of presumption. It's what's called a rebuttable presumption, because you have the presumption, presume to know that the property was stolen, but they can go forward and raise a reasonable doubt that they actually knew that. So you still do have that question. Basically, it boils down to are you satisfied that they acquired or retained the property knowing it was stolen, or do you have a reasonable doubt. . . ."

The jury resumed its deliberations and thereafter returned a verdict finding Roder guilty of receiving stolen property.[5] As noted, the jury indicated in response to the court's inquiry that the clarinet was the only item of stolen property on which it had reached unanimous agreement.

## II

▮ Roder's sole contention on appeal is that the trial court erred in instructing the jury on the presumption of guilty knowledge applicable to secondhand dealers embodied in section 496. ▮ ▮▮▮ ▮ He asserts that the United States Supreme Court's decisions in *Ulster County Court* v. *Allen, supra,* 442 U.S. 140, and *Sandstrom* v. *Montana, supra,* 442 U.S. 510, establish that such a presumption is unconstitutional because it relieves the

---

[4]The court's initial instruction on the presumption read in full: "If you find beyond a reasonable doubt that the defendants or either of them, that their place of business or the place of business of either of them, principal place of business was dealing in or collecting used or secondhand merchandise or personal property or that defendants were the agents or employees of such a person, that defendant or either of them had bought or received stolen property under such circumstances as would have caused the defendant or either of them to make reasonable inquiry that the person from whom such property was bought or received had the legal right to sell or deliver it without the defendants making such reasonable inquiry, then you shall presume that defendants bought or received such property knowing it to have been stolen unless from all the evidence you have reasonable doubt that defendants knew the property was stolen."

[5]The jury was not able to reach agreement on the receiving charge against Rayfield, and the court declared a mistrial on that count.

prosecution of its burden of proving all elements of the criminal offense beyond a reasonable doubt.[6]

In the past two decades the Supreme Court has repeatedly grappled with the problems raised by the use of presumptions in criminal cases. (See, e.g., *United States* v. *Gainey* (1965) 380 U.S. 63 [13 L.Ed.2d 658, 85 S.Ct. 754]; *United States* v. *Romano* (1965) 382 U.S. 136 [15 L.Ed.2d 210, 86 S.Ct. 279]; *Leary* v. *United States* (1969) 395 U.S. 6 [23 L.Ed.2d 57, 89 S.Ct. 1532]; *Turner* v. *United States* (1970) 396 U.S. 398 [24 L.Ed.2d 610, 90 S.Ct. 642]; *Barnes* v. *United States* (1973) 412 U.S. 837 [37 L.Ed.2d 380, 93 S.Ct. 2357]. See also *Tot* v. *United States* (1943) 319 U.S. 463 [87 L.Ed. 1519, 63 S.Ct. 1241].) In *Ulster County*—the most recent attempt to formulate general constitutional principles in this area—the court explained: "Inferences and presumptions are a staple of our adversary system of factfinding. It is often necessary for the trier of fact to determine the existence of an element of the crime—that is, an 'ultimate' or 'elemental' fact—from the existence of one or more 'evidentiary' or 'basic' facts. [Citations.] The value of these evidentiary devices, and their validity under the Due Process Clause, vary from case to case, however, depending on the strength of the connection between the particular basic and elemental facts involved and on the degree to which the device curtails the factfinder's freedom to assess the evidence independently. *Nonetheless, in criminal cases, the ultimate test of any device's constitutional validity remains constant: the device must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt.* See *In re Winship* [(1970)] 397 U.S. 358, 364; *Mullaney* v. *Wilbur* [(1975)] 421 U.S. [684,] 702-703, n. 31." (Italics added.) (442 U.S. at p. 156 [60 L.Ed.2d at pp. 791-792].)

In determining whether a particular evidentiary device meets this baseline standard, however, the *Ulster County* court emphasized that a sharp distinction must be drawn between two different types of devices: (1) "[an] entirely per-

---

[6]Preliminarily, we reject the People's claim that Roder is barred from raising this contention under the "invited error" doctrine. (See, e.g., *People* v. *Barraza* (1979) 23 Cal.3d 675, 683-684 [153 Cal.Rptr. 459, 591 P.2d 947]; *People* v. *Graham* (1969) 71 Cal.2d 303, 317-322 [78 Cal.Rptr. 217, 455 P.2d 153].) Although defendant did request an instruction which contained language similar to that given by the trial court, the instruction requested by the defense also contained an additional paragraph which would have given the defendant the benefit of a parallel, but opposite, presumption: "If, on the other hand, you find that a defendant bought property later determined to have been stolen, but made a reasonable inquiry that the person from whom such property was bought had a legal right to sell it, you shall presume that defendant did not have the knowledge of the property's stolen nature required for a conviction of § 496 P.C." The trial court rejected the defendant's proposed instruction.

Under these circumstances, we certainly cannot find that defense counsel "expresse[d] a deliberate tactical purpose in suggesting, resisting or acceding to [the] instruction" given by the trial court so as to bring the invited error doctrine into play. (See *Graham, supra,* 71 Cal.2d at p. 319.)

missive inference or presumption, which allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant" (*id.*, at p. 157 [60 L.Ed.2d at p. 792]), and (2) "[a] mandatory presumption . . . [which] tells the trier that he or they *must* find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts." (Original italics.) (*Ibid.*)

With respect to a permissive inference, the court reasoned that "[b]ecause this [type of device] leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the 'beyond a reasonable doubt' standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference." (*Ibid.*) "[O]nly in that situation," the court concluded, "is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination." (*Ibid.*)

On the other hand, the court recognized that "[a] mandatory presumption is a far more troublesome evidentiary device" insofar as the reasonable doubt standard is concerned. (*Ibid.*) Because such a presumption tells the trier of fact that it *must* assume the existence of the ultimate, elemental fact from proof of specific, designated basic facts, it limits the jury's freedom independently to assess all of the prosecution's evidence in order to determine whether the facts of the particular case establish guilt beyond a reasonable doubt. For that reason, the court concluded that a mandatory presumption must be judged "on its face," not "as applied" (*id.*, at pp. 157-160 [60 L.Ed.2d at pp. 792-794]), and that "since the prosecution bears the burden of establishing guilt, it may not rest its case on [such] a presumption unless the fact proved is sufficient to support the inference of guilt beyond a reasonable doubt." (*Id.*, at p. 167 [60 L.Ed.2d at p. 798].)[7]

In *Ulster County* itself, the court found that under the jury instructions given in that case the evidentiary device at issue—a statute which provided that the presence of a firearm in an automobile is "presumptive evidence" of the firearm's illegal possession by all persons in the vehicle—gave rise only to a permissive inference, not a mandatory presumption. Relying on its determination that the constitutionality of an instruction embodying such an inference

---

[7]Although the last-quoted passage from *Ulster County* suggests that a mandatory presumption may be upheld if the basic fact proved "is sufficient *to support* the inference of guilt beyond a reasonable doubt" (italics added) (*ibid.*), the reasoning of both *Ulster County* and *Sandstrom* would appear to mandate a more stringent test. Because a mandatory presumption *requires* the trier of fact to find that the elemental fact has been established when the presumption's terms have been met, such a device appears reconcilable with the prosecution's burden of proof under *Winship* only if the basic fact proved *compels* the inference of guilt beyond a reasonable doubt.

must be judged "as applied" rather than "on its face" (*id.*, at pp. 157-163 [60 L.Ed.2d at pp. 792-795]), the court reviewed the evidence in the case in some detail and upheld the conviction, finding that on the evidence presented "there is a 'rational connection' between the basic facts that the prosecution proved and the ultimate fact presumed, and the latter is 'more likely than not to flow' from the former." (*Id,* at p. 165 [60 L.Ed.2d at p. 797].)

Two weeks later, in *Sandstrom* v. *Montana, supra,* 442 U.S. 510, the court struck down an instruction—given in a murder case in which "intent" was an element of the charged offense—which informed the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts." Rejecting the prosecution's contention that the instruction merely described a permissive inference, the court found that "a reasonable juror could easily have viewed such an instruction as mandatory" (442 U.S. at p. 515 [61 L.Ed.2d at p. 45]) and could have interpreted it either as embodying a "conclusive presumption" of intent or as shifting the burden of persuasion on the issue of intent to the defendant. The court reasoned that under either interpretation the instruction was incompatible with the principles of *In re Winship, supra,* 397 U.S. 358, since it improperly relieved the prosecution of its burden of proving all elements of the offense beyond a reasonable doubt. (*Id.,* at pp. 521-524 [60 L.Ed.2d at pp. 49-51].)

In light of *Ulster County* and *Sandstrom,* it is apparent that in evaluating the constitutionality of any presumption in a criminal case, the threshold inquiry which a court must now undertake is to determine the nature of the device—permissive inference or mandatory presumption—involved in the proceeding. (See *Sandstrom, supra,* 442 U.S. at p. 514 [60 L.Ed.2d at p. 45].)[8]

In the present case, if we approach this threshold issue purely as a matter of statutory interpretation, there is little question but that the presumption established by section 496 is a "mandatory presumption" within the meaning of *Ulster County* and *Sandstrom.* As we have seen, under California law one of the elements of the offense of receiving stolen property is that the defendant must know that the property which he receives is stolen. *In re Winship, supra,* 397 U.S. 358, establishes, of course, that the People are constitutionally required to prove this element beyond a reasonable doubt.

---

[8]As Justice Powell pointed out in his dissenting opinion in *Ulster County* (442 U.S. at p. 170, fn. 3 [60 L.Ed.2d at p. 800]), *Ulster County* was the first case to focus on the distinction between "permissive" and "mandatory" presumptions as the touchstone of constitutional analysis in this area. The Attorney General concedes that in light of the new approach introduced in *Ulster County,* the decision in *People* v. *Katz* (1975) 47 Cal.App.3d 294 [120 Cal.Rptr. 603]—the only California case to pass on the constitutionality of section 496's presumption —must be reconsidered.

Under subdivisions 2 and 3 of section 496, however, the People's burden is lightened in two distinct respects.[9] First, subdivision 3, whose operation logically precedes subdivision 2, provides that once the People prove the first three of the statute's four "basic facts"—(1) that the defendant is a secondhand dealer, (2) that he bought or received stolen property, and (3) that he did so under circumstances that "should have caused him to make reasonable inquiry that the person from whom he bought . . . such property had the legal right to sell . . . it"—"*then the burden shall be on the defendant* to show that before so buying . . . such property, he made such reasonable inquiry" (italics added); thus, subdivision 3 appears to place the burden of persuasion with respect to the fourth basic fact on the defendant.[10] Second, if the defendant is unable to meet

---

[9]At the time of the alleged offense, section 496 read in full: "1. Every person who buys or receives any property which has been stolen or which has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds or aids in concealing, selling, or withholding any such property from the owner, knowing the property to be so stolen or obtained, is punishable by imprisonment in a state prison, or in a county jail for not more than one year; provided, that where the district attorney or the grand jury determines that such action would be in the interests of justice, the district attorney or the grand jury, as the case may be, may, if the value of the property does not exceed two hundred dollars ($200), specify in the accusatory pleading that the offense shall be a misdemeanor, punishable only by imprisonment in the county jail not exceeding one year. [¶] 2. Every person whose principal business is dealing in or collecting used or secondhand merchandise or personal property, and every agent, employee or representative of such person, who buys or receives any property which has been stolen or obtained in any manner constituting theft or extortion, under such circumstances as should cause such person, agent, employee or representative to make reasonable inquiry to ascertain that the person from whom such property was bought or received had the legal right to sell or deliver it, without making such reasonable inquiry, shall be presumed to have bought or received such property knowing it to have been so stolen or obtained. This presumption may, however, be rebutted by proof. [¶] 3. When in a prosecution under this section it shall appear from the evidence that the defendant's principal business was as set forth in the preceding paragraph, that the defendant bought, received, or otherwise obtained, or concealed, withheld or aided in concealing or withholding from the owner, any property which had been stolen or obtained in any manner constituting theft or extortion, and that the defendant bought, received, obtained, concealed or withheld such property under such circumstances as should have caused him to make reasonable inquiry to ascertain that the person from whom he bought, received, or obtained such property had the legal right to sell or deliver it to him, then the burden shall be upon the defendant to show that before so buying, receiving, or otherwise obtaining such property, he made such reasonable inquiry to ascertain that the person so selling or delivering the same to him had the legal right to so sell or deliver it. [¶] 4. Any person who has been injured by a violation of paragraph 1 of this section may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit and reasonable attorney's fees."

In 1980, subdivisions 2 and 3 were amended to apply the statutory presumption to "swap meet vendors," as defined in section 21661 of the Business and Professions Code, as well as to secondhand dealers. In all other respects, the statute remains unchanged.

[10]Although the language of subdivision 3 suggests that the defendant bears *the burden of proof or persuasion* (see Evid. Code, §§ 605-607) on the question of whether he made reasonable inquiry, under Evidence Code section 603 this provision could conceivably be interpreted simply to impose on the defendant *a burden of producing some evidence* on that issue—a burden of "going forward." Evidence Code section 603 provides that "[a] presumption affecting the burden of producing evidence is a presumption established to implement no public policy other than to facilitate the determination of the particular action in which the presumption is applied," and it may be that the Legislature placed this burden on the defendant simply because he was in the

his burden on the question of reasonable inquiry and the four basic facts are thus "established," subdivision 2 provides that he *"shall be presumed* to have bought or received such property knowing it to have been . . . stolen . . . ." (Italics added.) Although subdivision 2 also provides that this presumption "may . . . be rebutted by proof," the rebuttable nature of the presumption does not alter the fact that if the defendant decides to put the People to their proof, the statute *compels* the jury to presume that he had the requisite guilty knowledge simply from the prosecution's proof that he was a secondhand dealer who received stolen property under circumstances which called for a reasonable inquiry—facts which might permit, but certainly would not require, the jury to find beyond a reasonable doubt that defendant knew the property was stolen. Thus, on its face, section 496 is a classic example of a "mandatory presumption" described in *Ulster County,* for it "tells the trier [of fact] that he or they *must* find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts." (442 U.S. at p. 157 [60 L.Ed.2d at p. 792].)

Furthermore, in addition to the language of section 496 itself, the general provisions of the Evidence Code which define and prescribe the effect of "presumptions" in this state make it clear that the presumption of section 496 is a mandatory presumption under *Ulster County.* In this regard, Evidence Code section 600 explicitly distinguishes a "presumption" from an "inference," providing that "[a] presumption is an assumption of fact that the law *requires to be made* from another fact or group of facts found or otherwise established in the action" (italics added) (Evid. Code, § 600, subd. (a)), while "[a]n inference is a deduction of fact that *may* logically and reasonably *be drawn* from another fact or group of facts found or otherwise established in the action." (Italics added.) (*Id.,* subd. (b).) Since section 496 explicitly establishes a "presumption" rather than an "inference," the Evidence Code provisions confirm that the Legislature intended *to require* the jury to draw the assumption of guilty knowledge from proof of the basic facts, unless the defendant came forth with

best position to have evidence on the point, and not to implement any other public policy. (Cf. Evid. Code, § 605 (presumption affecting burden of proof).) Indeed, the fact that the trial court in this case omitted any instructions on subdivision 3 (see p. 502, *post*) suggests that it may have interpreted the provision as creating only a burden of production, and may have concluded that defendant met that burden by producing some evidence of inquiry in the form of the receipt book. (See Evid. Code, § 604.)

Even if subdivision 3 were interpreted as imposing only a burden of production, however, the constitutionality of section 496 as a whole would not be affected. In *Ulster County,* the court did suggest that "[t]o the extent that a presumption imposes an extremely low burden of production—e.g., being satisfied by 'any' evidence—it may well be that its impact is no greater than that of a permissive inference, and it may be proper to analyze it as such." (442 U.S. at p. 158, fn. 16 [60 L.Ed.2d at p. 792].) But, as discussed in text hereafter, subdivision 2 of section 496 clearly establishes a rebuttable presumption affecting the burden of persuasion on one element of the offense—guilty knowledge. Thus, when the combined effect of subdivisions 2 and 3 is considered, it is apparent that the statute impermissibly lightens the prosecution's burden of proving all elements of the offense beyond a reasonable doubt.

sufficient evidence to rebut the presumed fact.[11] This, of course, precisely meets *Ulster County*'s definition of a mandatory presumption. (See also *Sandstrom, supra,* 442 U.S. at p. 524 [61 L.Ed.2d at p. 51].)

Thus, if the nature of the presumption involved in this case were solely a matter of statutory interpretation, it would be clear that we are dealing with a "mandatory presumption." Moreover, since the Attorney General apparently concedes that the basic facts which the prosecution is required to prove to bring the presumption into play—defendant was a secondhand dealer and bought stolen property under circumstances calling for reasonable inquiry—do not on their face establish beyond a reasonable doubt that the defendant actually knew the property was stolen, it would follow under *Ulster County* and *Sandstrom* that defendant's conviction is constitutionally infirm. (See 422 U.S. at pp. 157-160, 167 [60 L.Ed.2d at pp. 792-794]; 442 U.S. at p. 523 [61 L.Ed.2d at pp. 50-51].)

The constitutional issue before us is a bit more complicated, however, because the Supreme Court in *Sandstrom* explained that a determination of the nature of the presumption at issue in any case "requires careful attention to the words actually spoken to the jury [citation], for whether a defendant has been accorded his constitutional rights depends upon the way a reasonable juror could have interpreted the instruction" (442 U.S. at p. 514 [61 L.Ed.2d at p. 45]; *Ulster County, supra,* 442 U.S. at p. 158, fn. 16 [60 L.Ed.2d at p. 792]), and in this case the instructions given to the jury differed from the relevant statutes in a number of respects favorable to Roder.[12] To begin with, the jury was not informed of the statutory definition of "presumption" in Evidence Code section 600, and thus was not explicitly told that it is an assumption "that the law requires to be made" from another fact. Second, in instructing the jury under section 496, the trial court omitted any reference to the provisions of subdivision 3 altogether, and thus did not tell the jurors that if the prosecution proved that defendant was a secondhand dealer and had obtained stolen property under circumstances calling for reasonable inquiry, the burden shifted to the defendant to show that he made such inquiry; instead, the court's instruction informed the jury that the prosecution bore the burden of proving that there had been no reasonable inquiry as well as the other basic facts. (See fn. 10, *ante.*) Finally, whereas section 496, subdivision 2 provides simply that if the basic facts are established the defendant "shall be presumed" to have the requisite guilty knowledge, the instruction given by the court told the jurors that

---

[11]Under Evidence Code section 607, the defendant's burden would be to raise a reasonable doubt as to the existence of the presumed fact. Section 607 provides: "When a presumption affecting the burden of proof operates in a criminal action to establish presumptively any fact that is essential to the defendant's guilt, the presumption operates only if the facts that give rise to the presumption have been found or otherwise established beyond a reasonable doubt, and, in such case, the defendant need only raise a reasonable doubt as to the existence of the presumed fact."

[12]The court's initial instruction to the jury on the presumption is quoted at footnote 4, *ante.*

if they found the basic facts "then you shall presume that defendant bought or received such property knowing it to have been stolen *unless from all the evidence you have reasonable doubt that defendants knew the property was stolen.*" (Italics added.) This concluding clause—not contained in the statute —could have been interpreted by the jurors to mean that even if they found the basic facts to exist, they were *not* required to find in accordance with the presumption and could refuse to do so if "from all the evidence"—that is, the evidence presented by either the prosecution or the defense (see *People* v. *Henderson* (1980) 109 Cal.App.3d 59, 62 [167 Cal.Rptr. 47])—they had a reasonable doubt that defendant knew the property was stolen. Thus, this language—taken by itself—could be read to suggest that the "presumption" of guilty knowledge was simply a permissive inference, which the jurors could, but were not required to, draw.

For a number of reasons, however, we cannot find that the jury was properly informed of the applicable constitutional principles in this case. In the first place, while the instruction that was given to the jury is—as just discussed —perhaps susceptible to interpretation as a permissive inference, taken as a whole it is at best ambiguous. The instruction did not inform the jury that if it found the basic facts it could, but was not required to, infer guilty knowledge, but instead told the jury that upon finding the basic facts, it "shall presume" such knowledge unless it had a reasonable doubt. As the Supreme Court noted in *Sandstrom,* "the common definition of 'presume' [is] 'to suppose to be true without proof,' Webster's New Collegiate Dictionary 911 (1974)" (442 U.S. at p. 517 [61 L.Ed.2d at p. 46]), and because the jury was given no legal definition of the term, we cannot assume that the jury understood the instruction as doing no more than informing it that it was free either to infer, or not to infer, guilty knowledge from proof of the basic facts. (See *People* v. *Henderson, supra,* 109 Cal.App.3d 59, 62-65.)[13]

Second, the ambiguity in the instruction was exacerbated by the trial court's explanation of the operation of the presumption in response to the jury's request for clarification. As noted above, at that point the court reviewed the four basic facts that had to be found to bring the presumption into play and then stated: "The presumption is that the defendants bought such property knowing it to have been stolen . . . . There are two kinds of presumptions. One is a con-

---

[13]The potential for juror confusion is highlighted by the district attorney's own description of the operation of the presumption in his closing argument to the jury. He stated: "Now, there is a special rule of law applicable to a case of this sort which involves secondhand dealers . . . . And obviously that applies to Mr. Roder and Miss Rayfield. . . . [¶] *If you were to find a series of circumstances, you could presume the knowledge necessary to convict Mr. Roder and Mrs. Rayfield because of their operation of a secondhand store.* [¶] And those circumstances are as follows: . . . They have to be in a secondhand business, acquire stolen property, under suspicious circumstances such that they should have made reasonable inquiry . . . and the last thing is you have to find they didn't make that inquiry." (Italics added.)

clusive presumption that if you have the presumption, that's it, you don't go any further. This isn't that kind of presumption. It's what's called a rebuttable presumption, because you have the presumption, presume to know that the property was stolen, but they can go forward and raise a reasonable doubt that they actually knew that. So you still do have that question. Basically, it boils down to are you satisfied that they acquired the property or retained the property knowing it was stolen, or do you have a reasonable doubt."

The Attorney General's brief, relying on the last sentence of the above quote, insists that the jury must have understood the court's comments to mean that the presumption would have no effect on the prosecution's burden of proof. But that reading ignores the court's statement—two sentences earlier—that once the presumption comes into play "they [i.e., the defendants] can go forward and raise a reasonable doubt that they actually knew that." The jury could certainly have understood that comment to mean that once the prosecution proved the basic facts, the burden shifted to the defense to raise a reasonable doubt as to the ultimate fact; conversely, if the defense raised no such doubt, the prosecution's case on the issue of knowledge was deemed established as a matter of law on the basis of circumstantial evidence which, as a matter of common sense, allowed, but by no means compelled, a finding of the ultimate fact. If that was the jury's understanding, the presumption would not have operated merely as a permissive inference. (See *Sandstrom, supra,* 442 U.S. at pp. 519, 524 [61 L.Ed.2d at pp. 48, 51].)

Accordingly, we conclude that from the instructions given in this case the jury could reasonably have interpreted the presumption of section 496 as relieving the prosecution of its burden of proving every element of the offense beyond a reasonable doubt. As *Ulster County* and *Sandstrom* establish, this was constitutional error.

The Attorney General contends that even if the trial court did err in this regard, the error was harmless. In *Sandstrom,* the Supreme Court left open the question whether such an instructional error was prejudicial per se or was subject to the harmless-beyond-a-reasonable-doubt standard of *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]. (442 U.S. at pp. 526-527 [61 L.Ed.2d at pp. 52-53].) The majority of courts that have faced this issue since *Sandstrom* have determined that the *Chapman* standard is applicable in this context. (See, e.g., *People v. Bedolla* (1979) 94 Cal.App.3d 1, 6-7 [156 Cal.Rptr. 171]; *McGuinn* v. *Crist* (9th Cir. 1981) 657 F.2d 1107, 1108-1109; *Holloway* v. *McElroy* (5th Cir. 1980) 632 F.2d 605, 618, cert. den. 451 U.S. 1028 [69 L.Ed.2d 398, 101 S.Ct. 3019]; *Krzeminski* v. *Perini* (6th Cir. 1980) 614 F.2d 121, 125, cert. den. 449 U.S. 866 [66 L.Ed.2d 84, 101 S.Ct. 199]; *State* v. *McKenzie* (1980) — Mont. — [608 P.2d 428, 457-459], cert. den. 449 U.S. 1050 [66 L.Ed.2d 507, 101 S.Ct.

626]; *State* v. *Caldwell* (1980) 94 Wn.2d 614 [618 P.2d 508, 510-511]. But see *People* v. *Burres* (1980) 101 Cal.App.3d 341, 353-354 [161 Cal.Rptr. 593].) ■ We need not, however, decide in this case whether the majority is wrong and whether this type of instructional error is invariably prejudicial, because even if—as the Attorney General claims—the *Chapman* standard applies, the error here cannot be found harmless beyond a reasonable doubt. The presumption in question directly affected the only element of the offense that was in issue, the prosecutor relied on the presumption in his closing argument (see fn. 13, *ante*), and the jury specifically requested an explanation of the instruction during its deliberations. Under these circumstances, we cannot find beyond a reasonable doubt that the instruction did not affect the jury's verdict. Thus, we conclude that defendant's receiving stolen property conviction must be reversed.

One question remains: What should the trial court do with section 496's presumption on retrial? ■ As discussed above, section 496 as currently worded prescribes a mandatory presumption, which—under *Ulster County* and *Sandstrom*—is clearly unconstitutional. The Attorney General contends, however, that the presumption of section 496 should not be struck down in its entirety, but—to save its constitutionality—should instead be construed as a legislatively prescribed permissive inference, on which a jury should be instructed in an appropriate case. In addition to the familiar authorities which teach that statutes should be interpreted to preserve their constitutionality whenever possible (see, e.g., *In re Kay* (1970) 1 Cal.3d 930, 942 [83 Cal.Rptr. 686, 464 P.2d 142]), the Attorney General relies on Evidence Code section 501 which provides that "[i]nsofar as any statute . . . assigns the burden of proof in a criminal case, such statute is subject to Penal Code section 1096," California's statutory embodiment of the rule that the prosecution bears the burden of proving guilt beyond a reasonable doubt.[14] The Attorney General reasons that because the holdings in *Ulster County* and *Sandstrom* are applications of the constitutional reasonable doubt rule, under Evidence Code section 501 the principles embodied in those decisions should be read into all California statutes— like section 496—which through the use of presumptions or similar devices assign the burden of proof in a criminal action.

Although the Attorney General's suggestion may require some creative statutory construction and the careful framing of jury instructions, we believe

[14]Section 1096 reads in full: "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal, but the effect of this presumption is only to place upon the state the burden of proving him guilty beyond a reasonable doubt. Reasonable doubt is defined as follows: 'It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they can not say they feel an abiding conviction, to a moral certainty, of the truth of the charge.' "

that the proposal is basically sound. Under Evidence Code section 501, any statute which assigns the burden of proof in a criminal case is made subject to the overriding rule that the prosecution bears the burden of proving guilt beyond a reasonable doubt. Before *Ulster County* and *Sandstrom,* it was not clear how that principle affected presumptions in criminal cases, but now that the Supreme Court has—at least in part—clarified the constitutional limits on the use of such presumptions, it appears more in keeping with the overall legislative intent for courts to pare down existing statutory presumptions to constitutionally permissible limits, rather than to abrogate them altogether.

With respect to section 496, the transformation of the statutory rebuttable presumption into a permissible inference appears quite reasonable and feasible. From the point of view of the defendant, a carefully drafted instruction which places the inference in context and does no more than inform the jury that upon the prosecution's proof of the four basic facts it is permitted—but not required—to infer guilty knowledge is fairly innocuous, for even without such an instruction a jury could, of course, reasonably infer that a secondhand dealer who fails to make reasonable inquiry when obtaining stolen property under suspicious circumstances knew that the property was stolen.[15] As a number of commentators have pointed out, a trial court's instruction on such a permissive inference with reference to the specific facts of the case is comparable to a restrained form of judicial comment on the evidence. (See Nesson, *Reasonable Doubt and Permissive Inferences: The Value of Complexity* (1979) 92 Harv. L.Rev. 1187, 1222-1224; Nesson, *Rationality, Presumptions and Judicial Comment: A Reply to Professor Allen* (1981) 94 Harv.L.Rev. 1574, 1587-1590; Allen, *Structuring Jury Decisionmaking in Criminal Cases: A Unified Constitutional Approach to Evidentiary Devices* (1980) 94 Harv.L.Rev. 321, 334-338.) The common law has long recognized the propriety of instructing the jury in receiving stolen property cases that it may—but is not required to—similarly infer a defendant's guilty knowledge from his unexplained possession of recently stolen property, and both this court and the United States Supreme Court have confirmed the constitutionality of instructing the jury as to this permissive inference. (*People* v. *McFarland* (1962) 58 Cal.2d 748 [26 Cal.Rptr. 473, 376 P.2d 449]; *Barnes* v. *United States, supra,* 412 U.S. 837.)

---

[15]We do not agree with the Attorney General's contention that the jury should be instructed that if they find the basic facts beyond a reasonable doubt they "should" draw the suggested inference, rather than that they "are permitted, but not required," to draw such an inference. In our view, the use of the word "should" in this context could easily be interpreted by a reasonable juror to transform the instruction from a permissive guideline into a mandatory directive, reintroducing the same constitutional problems posed by the current mandatory presumption. Although the Attorney General relies on a portion of the legislative comment to Evidence Code section 607 to support an instruction using the "should" language, section 607 and its comment were written as part of a statutory scheme which contemplated that the jury *would be required to* assume the existence of the presumed fact from proof of other facts. (Evid. Code, § 600, subd. (a).)

From the state's point of view, there is considerable benefit in retaining the "secondhand dealer" provision of section 496 in revised form as a permissive inference, even if it cannot survive as a mandatory presumption. First, preservation of the statutory provisions in a restrained form will still enable the court to inform the jury of an inference which the Legislature—drawing on its general experience—has concluded can often reasonably be drawn from proof of the basic facts (cf. *United States* v. *Gainey, supra,* 380 U.S. 63, 67 [13 L.Ed.2d 658, 662]); elimination of the device would deprive the jury of any legislative guidance in circumstances in which direct evidence of actual guilty knowledge will rarely be available. (See generally ALI, Model Pen. Code, § 223.6, coms. 1, 4(d), pp. 232, 241-245.) Second, even as a permissive inference, the statutory provision will serve an important substantive function in regulating the conduct of secondhand dealers, inducing such dealers to make reasonable inquiry when they are offered property that may be stolen. (Blakely & Goldsmith, *Criminal Redistribution of Stolen Property: The Need for Law Reform* (1976) 74 Mich.L.Rev. 1511, 1572-1589.) The state has a strong interest in encouraging dealers to conduct their business in this fashion in order to make it more difficult for thieves to dispose of their wares, and it appears appropriate to interpret section 496 to preserve this interest insofar as is constitutionally permissible.

Accordingly, we conclude that pursuant to Evidence Code section 501, section 496 should be construed as authorizing only a permissive inference, not a mandatory presumption. On remand, the trial court should fashion an appropriate instruction, which informs the jury of the permissive inference but at the same time makes clear that the prosecution retains the burden of proving every element of the offense beyond a reasonable doubt. (See, e.g., Nesson, *Rationality, Presumptions and Judicial Comment, supra,* 94 Harv.L.Rev. at p. 1589.)

The conviction of receiving stolen property is reversed. The conviction of possession of more than one ounce of marijuana is affirmed.

Bird, C. J., Mosk, J., Richardson, J., Broussard, J., Reynoso, J., and Puglia, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.