[No. C003114. Third Dist. Jan. 27, 1989.]

THE PEOPLE, Plaintiff and Appellant, v.
JAY SPENCER CAFFERO et al., Defendants and Respondents.

**COUNSEL**

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Shirley A. Nelson and Janet G. Bangle, Deputy Attorneys General, for Plaintiff and Appellant.

Paul R. Irish and Cynthia A. Thomas, under appointments by the Court of Appeal, for Defendants and Respondents.

**OPINION**

**PUGLIA, P. J.**—The People appeal from the judgment dismissing the information charging murder (Pen. Code, § 187) following the granting of defendants' motion under Penal Code section 995 (all further statutory references to sections of an undesignated code are to the Penal Code).

On appeal the parties debate the suitability of felony child abuse (§ 273a, subd. (1)) to support application of the second degree felony-murder rule, dividing on the questions: (1) whether it is inherently dangerous to human life (see *People* v. *Burroughs* (1984) 35 Cal.3d 824 [201 Cal.Rptr. 319, 678 P.2d 894]) and (2) whether it is integral to the homicide (see *People* v. *Ireland* (1969) 70 Cal.2d 522 [75 Cal.Rptr. 188, 450 P.2d 580, 40 A.L.R.3d 1323]). The first question was raised but not decided in *People* v. *Smith* (1984) 35 Cal.3d 798, 808 [201 Cal.Rptr. 311, 678 P.2d 886], and *People* v.

*Benway* (1985) 164 Cal.App.3d 505, 509, footnote 3 [210 Cal.Rptr. 530]. Although the second question has been considered in several cases, a comprehensive, workable rule has not evolved. (See *People* v. *Smith, supra,* at pp. 802-808; *People* v. *Shockley* (1978) 79 Cal.App.3d 669, 674-677 [145 Cal.Rptr. 200]; *People* v. *Benway, supra,* at pp. 509-513; *People* v. *Northrop* (1982) 132 Cal.App.3d 1027, 1033-1037 [182 Cal.Rptr. 197], disapproved in *People* v. *Smith, supra,* at p. 808.)

We shall hold that felony child abuse is not inherently dangerous to human life and therefore not an appropriate predicate to application of the felony-murder rule. Our conclusion renders the second question academic. We are then left with the task of considering the evidence at the preliminary hearing to determine if it provides a rational basis for believing that defendants are guilty of murder, i.e., that they acted with malice aforethought (*People* v. *Slaughter* (1984) 35 Cal.3d 629, 633 [200 Cal.Rptr. 448, 677 P.2d 854]). Finding that it does not, we shall affirm.

Defendants Jay and Tina Caffero are the parents of Christina, who was born prematurely on December 17, 1986. Christina was kept in the hospital for five days after her birth for medical reasons. She was then returned home to the care of defendants.

On December 31, Tina became concerned about Christina's health because the infant was "jumpy." Tina called the hospital emergency room for advice, explaining that Christina was "blinking and jerking." She was told to contact her own physician or bring the infant to the emergency room if she believed it was a "real emergency." Tina decided instead to wait until her mother-in-law, Sharon Caffero, could see the infant the next day. On January 1, Sharon Caffero saw Christina and expressed the opinion she suffered from colic and had a "diaper rash."

At 10:40 p.m. on January 2, defendants brought Christina to the hospital emergency room. The triage nurse observed Christina had good facial color and deemed her "non-urgent." Christina's temperature was 98.9 degrees.

The nurse next viewed Christina at midnight. At that time she noticed Christina was pale, had sores on her anus and foot and fecal staining on her skin. A doctor was immediately summoned. Despite intensive treatment, Christina's condition rapidly deteriorated. By 1:30 a.m., her temperature had plummeted to 93.2 degrees and her blood pressure was extremely low. She died later that day of an overwhelming bacterial infection, Escherichia coli (E. coli).

Four medical doctors agreed, with varying degrees of confidence, that the infection most likely had been introduced into Christina's bloodstream

through a perianal sore and that lack of proper hygiene contributed to the development and worsening of this and other serious sores. All agreed such sores would usually take several days to develop and to break the skin if diapers were not regularly changed. The doctors further agreed that once the E. coli infection is introduced into an infant's bloodstream, it can overwhelm the entire system within a day or two. The doctors testified that Christina had lost a small amount of weight since birth, but could not be deemed starving or malnourished.

At the conclusion of the preliminary examination, the magistrate declined to hold defendants to answer on the murder charge, but did hold them on a violation of section 273a, subdivision (1), felony child abuse. The magistrate made no factual findings. In an information filed on May 28, 1987, the People charged murder and felony child abuse. The superior court granted defendants' motion to dismiss the murder charge. (§ 995.)

I

■ "The felony-murder rule operates (1) to posit the existence of malice aforethought in homicides which are the direct causal result of the perpetration or attempted perpetration of *all* felonies inherently dangerous to human life, and (2) to posit the existence of malice aforethought and to classify the offense as murder of the first degree in homicides which are the direct causal result of those six felonies specifically enumerated in section 189 of the Penal Code. [Citations.] Thus, 'A homicide that is a direct causal result of the commission of a felony inherently dangerous to human life (other than the six felonies enumerated in Pen. Code, § 189) constitutes at least second degree murder.' [Citation.]" (Italics original.) (*People* v. *Ireland, supra,* 70 Cal.2d at p. 538.)

Second degree felony-murder convictions have been sustained on the unchallenged, unarticulated assumption that violation of section 273a, subdivision (1) is a felony inherently dangerous to human life. (*People* v. *Shockley, supra,* 79 Cal.App.3d at pp. 674-677; *People* v. *Northrop, supra,* 132 Cal.App.3d at pp. 1031-1040 [disapproved on other grounds in *People* v. *Smith, supra,* 35 Cal.3d 798, 807-808].) However, we believe the later decision in *People* v. *Burroughs, supra,* 35 Cal.3d 824, is inconsistent with the continued indulgence of that assumption.

In *Burroughs,* defendant was convicted of second degree felony murder. The underlying felony on which the existence of malice was posited was violation of Business and Professions Code section 2053, practicing medicine without a license. That section states in relevant part: "Any person who willfully, *under circumstances or conditions which cause or create a risk*

*of great bodily harm,* serious physical or mental illness, *or death,* practices or attempts to practice . . . any system or mode of treating the sick or afflicted in this state . . . without being authorized to perform such act . . . is punishable by imprisonment . . . in the state prison." (Bus. & Prof. Code, § 2053, italics added.) In similar language, section 273a, subdivision (1), states in relevant part: "Any person who, *under circumstances or conditions likely to produce great bodily harm or death,* willfully causes or permits any child to suffer . . . is punishable by imprisonment . . . in the state prison . . . ." (Italics added.)

■    In analyzing whether a felony is inherently dangerous to human life, the elements of the felony must be examined in the abstract, not the particular facts of the case. (*Burroughs, supra,* 35 Cal.3d at pp. 829-830; *People* v. *Williams* (1965) 63 Cal.2d 452, 458, fn. 5 [47 Cal.Rptr. 7, 406 P.2d 647]; *People* v. *Lopez* (1971) 6 Cal.3d 45, 51 [98 Cal.Rptr. 44, 489 P.2d 1372].) The statutory definition of the offense must be viewed as a whole, taking into account even nonhazardous ways of violating it which do not endanger human life. If the statute may be violated by conduct which does not endanger human life, it is not inherently dangerous to human life. (*Burroughs, supra,* 35 Cal.3d at pp. 830-831.)

The statutory analysis in *Burroughs* focused on the phrase "great bodily harm . . . or death." (Bus. & Prof. Code, § 2053.) The court concluded that the statute treats death and great bodily harm as discrete risks and that injuries constituting great bodily harm "do not rise to the level of being inherently life-threatening." (*Burroughs,* 35 Cal.3d at p. 831.)

Like Business and Professions Code section 2053, section 273a, subdivision (1) is implicated in a wide range of circumstances including those likely to produce "great bodily harm or death." It also shares the same grammatical structure found significant in *Burroughs* in that it separates the life threatening risk, "death," from the nonlife-threatening risk, "great bodily harm," with the disjunctive "or."

■    The People endeavor to distinguish *Burroughs,* noting that Business and Professions Code section 2053 is elevated to a felony by "circumstances or conditions which cause or *create a risk* of great bodily harm, serious physical or mental illness, or death." (Italics added.) The People further note that, in contrast, section 273a, subdivision (1) makes child abuse felonious "under circumstances or conditions *likely to produce* great bodily harm or death." (Italics added.) The comparatively higher probability of great bodily harm required by the latter section, however, remains irrelevant to the question of "inherent danger to human life." As we read *Bur-*

*roughs,* even certainty of great bodily harm would not support an implication of inherent risk of death. (35 Cal.3d at p. 831.)

The People attempt to distinguish section 273a, subdivision (1) because, unlike Business and Professions Code section 2053, it pertains only to children, who, it is argued, are less able as a group than adults to recover from serious injury and thus more likely to suffer death. We are not persuaded. Considering the statute, as we must, in the abstract, the People's argument necessarily assumes that a normal 17-year-old minor is especially vulnerable to the same degree as the premature infant in this case. This is plainly contrary to reason. For example, a fracture of a limb although deemed "great bodily harm" is not likely to endanger the life of an infant, much less of a 17-year-old. (See *Burroughs, supra,* 35 Cal.3d at p. 831.)

Although the victims of both crimes are found among the most vulnerable in our society, the sick and infirm on the one hand and children on the other, there are substantial differences in the social impacts of practicing medicine without a license and felony child abuse. We are not unaware of the shocking incidence of child abuse in our society nor indifferent to the special need of helpless children for the full measure of protection which the law can afford. Nevertheless, applying the *Burroughs* analysis to the functionally indistinguishable language of section 273a, subdivision (1), we are impelled to the conclusion that felony child abuse is not inherently dangerous to human life within the meaning of the felony-murder rule.

## II

In declining to hold defendants to answer for murder, the magistrate did not make findings of fact. Thus, we must uphold the trial court's dismissal (§ 995) of the refiled murder charge (§ 739) unless the evidence provides a rational basis for assuming the crime of murder has been committed and defendants are guilty of it in which case the dismissal was erroneous as a matter of law. (*People* v. *Slaughter, supra,* 35 Cal.3d at pp. 637-638.) If there is some evidence to support the charge, the courts will not inquire into its sufficiency (*Jackson* v. *Superior Court* (1965) 62 Cal.2d 521, 525 [42 Cal.Rptr. 838, 399 P.2d 374]). However, an information must be set aside if there is a total absence of evidence to support a necessary element of the crime charged. (*Somers* v. *Superior Court* (1973) 32 Cal.App.3d 961, 963 [108 Cal.Rptr. 630].)

The People do not contend the evidence shows defendants acted with express malice. Rather, they argue malice may be implied from the evidence that defendants omitted to discharge their parental duty of care, thus demonstrating an "abandoned and malignant heart."

■  Malice is implied when "a person does ' " ' 'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who *knows* that his conduct endangers the life of another and who acts with conscious disregard for life' " ' . . . [citations]," or stated another way, "when defendant does an act with a high probability that it will result in death and does it with a base antisocial motive and with a wanton disregard for human life. [Citation.]" (*People* v. *Watson* (1981) 30 Cal.3d 290, 300 [179 Cal.Rptr. 43, 637 P.2d 279], italics added.) For malice to be implied, there must be evidence that defendants had a subjective awareness that their acts or omissions endangered the life of their child.

■  The evidence establishes that Christina's condition became extremely grave a short time after she was brought to the hospital. Within hours of her arrival she died of an overwhelming bacterial infection, E. coli, introduced into her system through perianal sores.

Dr. Smedley, an emergency medicine specialist, testified that Christina's skin was stained from prolonged contact with fecal matter causing it to break down into open sores in the perianal area. According to Dr. Achtel, a pediatric intensive care specialist, these sores were the worst he had ever seen over many years of contact with sick children and probably required several days to develop. Dr. Moody, another pediatric intensive care specialist, also regarded Christina's perianal sores as the most severe he had ever seen on a child her age.

It is reasonably inferable that Christina's death was caused by grossly inadequate care at the hands of defendants, specifically their failure to maintain minimally acceptable standards of hygiene and to seek timely medical care for Christina. However, there is no evidence defendants were actually aware their conduct endangered Christina's life. Although the physicians testified Christina's sores probably began to develop in the days before defendants brought her to the hospital, no evidence suggested defendants knew they were life-threatening. Christina's grandmother had examined her the day before she was brought to the hospital and advised Tina she had "colic and diaper rash." Tina had applied a "cream" to the affected area. Two days before she was brought to the hospital Tina observed that Christina was "blinking and jerking." She reported this to hospital emergency room personnel but the advice she received conveyed no sense of urgency about the need for immediate medical attention. Indeed, when Christina arrived at the hospital she exhibited no obvious symptoms of her life-threatening condition. Her temperature was only marginally above normal and her skin color was good. On admission an experienced triage nurse deemed her "non-urgent."

Although the uncontradicted evidence establishes Christina's death was due to a shocking pattern of neglect, the evidence will not support the inference defendants acted with conscious or wanton disregard for human life and thus with malice aforethought.

The judgment is affirmed.

Evans, J., and Blease, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 20, 1989.