[No. C032228. Third Dist. Jan. 3, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
REFUGIO ANTHONY SANCHEZ, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I and II.

972

**COUNSEL**

Frank G. Prantil for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson and Arnold O. Overoye, Assistant Attorneys General, and Charles A. French, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**SCOTLAND, P. J.**—One passenger was killed and two were seriously injured when defendant Refugio Anthony Sanchez crashed his car while trying to elude pursuing police officers. Criminal charges were filed, and defendant was convicted of a number of offenses, including second degree murder. (Pen. Code, § 187, subd. (a).) Sentenced to state prison, he appeals.

In the published portion of this opinion, we agree with defendant that his murder conviction must be reversed because the trial court erred in instructing the jury, pursuant to the felony-murder doctrine, that a person who kills a human being while violating Vehicle Code section 2800.3 is guilty of second degree murder. (Further section references are to the Vehicle Code unless specified otherwise.) We are not the first appellate court to conclude that the violation of section 2800.3 "cannot support a charge of felony murder." (*People v. Jones* (2000) 82 Cal.App.4th 663, 666 [98 Cal.Rptr.2d 724].) But we do so for reasons different from those stated in *People v. Jones*. As we shall explain, in determining whether the felonious violation of

section 2800.3 is inherently dangerous to human life as required for application of the second degree felony-murder doctrine, we must look to the elements of the statute in the abstract, rather than to defendant's specific conduct. In doing so, we conclude that, because dispositive elements of section 2800.3 can be satisfied by conduct that does not necessarily pose a high probability of death, it is not a felony inherently dangerous to human life. Thus, section 2800.3 cannot serve as the predicate crime for application of the second degree felony-murder doctrine.

In the unpublished parts of this opinion, we reject defendant's remaining claims of error. Accordingly, we shall reverse his murder conviction, but affirm the other convictions and special findings.[1]

### FACTS

Around 2:00 a.m. on March 1, 1998, Officer John Morris saw defendant's car run a stop sign and two red lights at speeds between 35 to 55 miles per hour. Morris turned on the red lights and siren of his marked patrol vehicle and pursued the car, which barely missed colliding with another vehicle while speeding through an intersection. Goldie McCowan, one of three passengers in defendant's car, told defendant to pull over because police were behind them. Defendant refused to do so, claiming he could get away. Eventually, all the passengers pleaded for defendant to pull over. But "[h]e just turned up the music" and drove faster.

Defendant accelerated to speeds between 85 to 100 miles per hour. As he drove down a residential street at high speed, defendant came to a 90-degree turn in the road. Unable to make the turn, defendant lost control of the car, the right rear of which "swung out" and "clipped the guardrail." After hitting the guardrail, the car flipped upside down and crashed into a house. Skid marks indicated that defendant's car was traveling at approximately 84 miles per hour when he lost control at the turn in the road.

Officer Morris stopped to render aid and arrest the driver. Flames were coming out of the front of the car, and smoke and gasoline pouring out of the

---

[1]In addition to murder, defendant was convicted of proximately causing the death or great bodily injury of three passengers while attempting to elude a peace officer (§ 2800.3); driving under the influence of alcohol (§ 23153, subd. (a)) and proximately causing bodily injury to more than one victim (§ 23182 [now § 23558]); driving at an unsafe speed with a blood-alcohol content of .08 percent or greater (§§ 22350, 23153, subd. (b)) and proximately causing bodily injury to more than one victim (§ 23182 [now § 23558]); and driving with a suspended or revoked license (§ 14601.2, subd. (a)). Defendant admitted that he had a prior serious felony conviction (Pen. Code, §§ 667, subds. (b)-(i), 1170.12) and had served a prior prison term (Pen. Code, § 667.5, subd. (b)).

back. A car door was open, and one of the passengers was facedown on the ground, with the vehicle partially on top of her. Morris heard a woman in the back of the car screaming for help.

As others who had joined the pursuit attended to the passengers, Officer Bobby Daniels and another officer pulled defendant from the car. Defendant, who did not appear to be injured, was belligerent and continually screamed at the officers. Noticing that defendant had a strong odor of alcohol on his breath and was unable to stand on his own, Officer Daniels concluded that defendant was under the influence of alcohol. Subsequent testing revealed that defendant had a blood-alcohol level of .18 percent.

One of the passengers, Lakisha Davis, died as a result of the crash. Goldie McCowan suffered a broken right arm, a fractured collarbone, and injuries to her hip. Shanise Shaver was cut and bruised on her hand, head, and stomach.

Prior to the fatal crash, defendant had been convicted of driving under the influence of alcohol and his driver's license had been suspended.

DISCUSSION

I, II*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

III

The jury was presented with two alternative theories to support defendant's conviction of second degree murder: (1) he acted with implied malice in unlawfully killing Lakisha Davis, or (2) he caused her death while committing a felony that is inherently dangerous to human life but is not enumerated in Penal Code section 189 (the second degree felony-murder rule).[3]

The implied malice theory applies "when a defendant, knowing that his or her conduct endangers life and acting with conscious disregard of the danger, commits an act the natural consequences of which are dangerous to [human] life," i.e., an act which, by its nature, poses "a high probability that it will result in death." (*People v. Roberts* (1992) 2 Cal.4th 271, 317 [6 Cal.Rptr.2d 276, 826 P.2d 274]; *People v. Watson* (1981) 30 Cal.3d 290, 300 [179 Cal.Rptr. 43, 637 P.2d 279].) In such a circumstance, it may be inferred that the defendant acted with malice aforethought in committing the unlawful killing of a human being, i.e., committed murder. For example, a defendant who kills another as a result of driving under the influence of

---

*See footnote, *ante,* page 970.

[3]A person who kills a human being during the commission of a felony enumerated in Penal Code section 189 is guilty of first degree felony murder.

alcohol at highly excessive speeds, "an act presenting a great risk of . . . death," may be found to have acted wantonly and with conscious disregard for human life, i.e., with implied malice, and thus to have committed second degree murder. (*People v. Watson, supra,* at pp. 300-301.)

■ The second degree felony-murder theory applies when a defendant commits a homicide during the perpetration of a felony that is inherently dangerous to human life but is not enumerated in Penal Code section 189. (*People v. Hansen* (1994) 9 Cal.4th 300, 308 [36 Cal.Rptr.2d 609, 885 P.2d 1022].) " 'The felony-murder doctrine, whose ostensible purpose is to deter those engaged in felonies from killing negligently or accidentally, operates to posit the existence of that crucial mental state—and thereby to render irrelevant evidence of actual malice or the lack thereof—when the killer is engaged in a felony whose inherent danger to human life renders logical an imputation of malice on the part of all who commit it.' " (*Ibid.,* quoting *People v. Satchell* (1971) 6 Cal.3d 28, 43 [98 Cal.Rptr. 33, 489 P.2d 1361, 50 A.L.R.3d 383].) In other words, a defendant who kills a human being during the commission of a felony that is inherently dangerous to human life is deemed to have acted with malice aforethought, i.e., committed murder. A felony is inherently dangerous to human life when it "carr[ies] 'a high probability' that death will result." (*People v. Patterson* (1989) 49 Cal.3d 615, 627 [262 Cal.Rptr. 195, 778 P.2d 549], italics omitted.)

Hence, the difference between implied malice and felony murder is that, under the implied malice theory, when the defendant kills a person while committing an act which, by its nature, poses a high probability that the act will result in death, the trier of fact *may infer* the defendant killed with malice aforethought; whereas, under the felony-murder theory, if the inherently dangerous act is a felony, the defendant *is deemed* to have killed with malice aforethought as a matter of law. (*People v. Satchell, supra,* 6 Cal.3d at p. 43 ["the determination that an underlying felony will not properly support a felony-murder instruction simply removes the short-circuit provided by that doctrine and requires that the existence of [malice] be demonstrated to the trier of fact"].)

In this case, defendant's appeal addresses only the second theory tendered by the prosecutor, that defendant was guilty of felony murder based upon his violation of section 2800.3, which was charged as a felony.[4]

Over defendant's objection, the trial court agreed with the prosecutor that the felonious violation of section 2800.3 is an inherently dangerous felony that can support a murder conviction via the second degree felony-murder

[4]Section 2800.3 is not a felony enumerated in Penal Code section 189.

doctrine. Consequently, the court instructed the jury as follows: "Every person who unlawfully kills a human being with malice aforethought *or during the commission or attempted commission of evading a peace officer, a felony inherently dangerous to human life*, is guilty of the crime of murder in violation of Section 187 of the Penal Code. [¶] In order to prove this crime, each of the following elements must be proved: [¶] One, a human being was killed; and two, the killing was unlawful; and three, the killing was done with malice aforethought *or occurred during the commission or attempted commission of evading a peace officer, a felony inherently dangerous to human life. [¶] Evading a peace officer is a felony inherently dangerous to human life.*" (Italics added.) The court further instructed that "[t]he unlawful killing of a human being whether intentional, unintentional, or accidental, *which occurs during the commission or attempted commission of a crime of evading a peace officer is murder of the second degree when the perpetrator had the specific intent to commit that crime.*" (Italics added.)[5]

■ Defendant contends "it was error for the court to predicate a felony[-]murder instruction upon a violation of section 2800.3." We agree for reasons that follow.

Under specified conditions satisfied by the evidence in this case, "[a]ny person who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty of a misdemeanor . . . ." (§ 2800.1.) Section 2800.3 provides that "[w]henever willful flight or attempt to elude a pursuing peace officer in violation of Section 2800.1 proximately causes death or serious bodily injury to any person, the person driving the pursued vehicle, upon conviction, shall be punished by [confinement in state prison or county jail]."

■ As we have noted, to serve as the basis for the second degree felony-murder rule, the predicate crime must be a felony inherently dangerous to human life, i.e., there must be a high probability that death will result from its commission. (*People v. Patterson, supra,* 49 Cal.3d at p. 627.) "In determining whether a felony is inherently dangerous [to human life], the

---

[5]There is no merit to defendant's claim that these instructions applied the second degree felony-murder rule to a *misdemeanor* violation of section 2800.1, which punishes a driver who, with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle. Although the trial court used a shorthand description of the underlying offense by characterizing it as "a crime of evading a peace officer," a reasonable jury would not have believed that this meant a violation of section 2800.1. Viewing the instructions as a whole, including those given regarding sections 2800.1 and 2800.3, the jurors necessarily would have understood that "a crime of evading a peace officer," which the trial court repeatedly described as "a felony," meant a violation of section 2800.3.

court looks to the elements of the felony *in the abstract*, 'not the "particular" facts of the case,' i.e., not to the defendant's specific conduct. [Citation.]" (*People v. Hansen, supra,* 9 Cal.4th at p. 309, original italics; *People v. Burroughs* (1984) 35 Cal.3d 824, 829-830 [201 Cal.Rptr. 319, 678 P.2d 894].)[6]

In *People v. Burroughs, supra,* 35 Cal.3d 824, the Supreme Court laid out the analytical model for determining whether, in the abstract, the elements of a felony make the crime inherently dangerous to human life. Courts "look first to the primary element of the offense at issue, then to the 'factors elevating the offense to a felony,' . . . In this examination we are required to view the statutory definition of the offense as a whole, taking into account even nonhazardous ways of violating the provisions of the law which do not necessarily pose a threat to human life." (*Id.* at p. 830, citations omitted.) Thus, if dispositive elements of the statute may be established by conduct that does not endanger human life, it is not a felony inherently dangerous to human life. (*People v. Caffero* (1989) 207 Cal.App.3d 678, 683 [255 Cal.Rptr. 22].)

■ As can be seen from the statutory language quoted above, the primary element of section 2800.3 is that, while operating a motor vehicle and with the intent to evade, a person willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle. Common sense and common experience indicate that attempts by drivers to flee or otherwise elude pursuing peace officers often involve conduct that is inherently dangerous to human life. This case is a prime example of such reprehensible misconduct. But, as the Supreme Court has instructed, we must examine the crime in the abstract. And, as can be attested to by those who watched the ludicrous pursuit of Orenthal James Simpson in his white Bronco, a driver can flee or otherwise attempt to elude pursuing officers in a manner that does not pose a high probability of death to anyone. (Berman & Goldman, *Nation Transfixed by Extraordinary Spectacle Chase*, L.A. Times (June 18, 1994) p. 1; CNN, *O.J. Simpson: The Arrest* (June 17, 1994) <http://www.cnn.com/US/OJ/arrest/index.html> [as of Jan. 3, 2001].) Hence, the primary element of section 2800.3 fails to support a determination that the offense is an inherently dangerous felony.

Therefore, we turn to the factor that elevates the misconduct from a misdemeanor to a felony, i.e., when the person driving the pursued vehicle

---

[6]"This form of analysis is compelled because there is a killing in every case where the [felony-murder] rule might potentially be applied. If in such circumstances a court were to examine the particular facts of the case prior to establishing whether the underlying felony is inherently dangerous [to human life], . . . the existence of the dead victim might appear to lead inexorably to the conclusion that the underlying felony is exceptionally hazardous. [But such an analysis would be] unjustifiable bootstrapping." (*People v. Burroughs, supra,* 35 Cal.3d at p. 830.)

proximately causes death "or" serious bodily injury to any person while fleeing or otherwise attempting to elude a pursuing peace officer. For the purposes of Vehicle Code section 2800.3, "serious bodily injury" has the same meaning as the phrase is defined in Penal Code section 243—" 'Serious bodily injury' means a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement." (Pen. Code, § 243, subd. (f)(4).)

That "death" and "serious bodily injury" are identified in the disjunctive as separate risks in section 2800.3 indicates the Legislature intended that a person may violate the section without necessarily endangering human life. (Cf. *People v. Burroughs, supra,* 35 Cal.3d at p. 830.)

In this respect, Vehicle Code section 2800.3 is like Business and Professions Code section 2053, which elevates to a felony the unlawful practice of medicine "under circumstances or conditions which cause or create risk of great bodily harm, serious physical or mental illness, *or* death . . . ." (Italics added.) That the section includes death in the disjunctive, separate from the lesser harms of great bodily injury, serious physical illness, and serious mental illness, "strongly suggests the Legislature perceived that one may violate the proscription against the felonious practice of medicine without a license and yet not necessarily endanger human life." (*People v. Burroughs, supra,* 35 Cal.3d at p. 830.) Consequently, the Supreme Court has held that the violation of Business and Professions Code section 2053 is not a felony inherently dangerous to human life because dispositive elements of the offense can be established by conduct which does not create a substantial risk that someone will be killed. (35 Cal.3d at pp. 830-833.) Therefore, a violation of that section cannot serve as a predicate for the second degree felony-murder rule. (*Ibid.*)

In the same way, Vehicle Code section 2800.3 is like Penal Code section 273a, which makes it a felony for a person to commit child abuse "under circumstances or conditions likely to produce great bodily harm *or* death . . . ." (Italics added.) As this court recognized in *People v. Caffero, supra,* 207 Cal.App.3d 678, Penal Code section 273a "shares the same grammatical structure found significant in *Burroughs* in that it separates the life threatening risk, 'death,' from the nonlife-threatening risk, 'great bodily harm,' with the disjunctive 'or.' " (*People v. Caffero, supra,* at p. 683.) Because dispositive elements of Penal Code section 273a can be satisfied by conduct that does not endanger the life of a child, "felony child abuse is not inherently dangerous to human life within the meaning of the felony-murder rule." (207 Cal.App.3d at p. 684.)

So it is with section 2800.3, which covers a wide range of circumstances, including conduct that proximately causes death "or" serious bodily injury. Because dispositive elements of the statute can be satisfied by conduct that does not necessarily pose a high probability of death, the violation of section 2800.3, in the abstract, is not a felony inherently dangerous to human life. Consequently, it cannot serve as the predicate crime for application of the second degree felony-murder rule. (Cf. *People v. Burroughs, supra,* 35 Cal.3d at pp. 829-833; *People v. Caffero, supra,* 207 Cal.App.3d at pp. 683-684.)

The People disagree, relying in large part on *People v. Johnson* (1993) 15 Cal.App.4th 169 [18 Cal.Rptr.2d 650], which held that the violation of section 2800.2 is a felony inherently dangerous to human life for purposes of the second degree felony-murder rule. (*People v. Johnson,* at pp. 173-174 (review den.); accord, *People v. Sewell* (2000) 80 Cal.App.4th 690, 693-697 [95 Cal.Rptr.2d 600] (review den.).) But that case is of no help to the People because the statutory language of section 2800.2 differs significantly from the wording of section 2800.3.

It also is of no help to the People that, as they point out, a violation of section 2800.3 usually involves a high probability of death. To reiterate what already has been said by the Supreme Court and in this opinion, a felony qualifies as being inherently dangerous to human life for purposes of the second degree felony-murder rule only if, viewed in the abstract, dispositive elements of the crime cannot be satisfied without creating a substantial risk that someone will be killed. (See *People v. Burroughs, supra,* 35 Cal.3d at p. 833.)

As we have shown, dispositive elements of section 2800.3 can be satisfied by conduct that does not necessarily pose a high probability of death. Accordingly, the trial court erred in instructing the jury that a violation of section 2800.3 is a felony inherently dangerous to human life and that a person who unlawfully kills a human being while violating or attempting to violate section 2800.3 is guilty of the crime of murder.

■ The trial court's misinstructions on the elements of second degree felony murder require reversal of defendant's murder conviction unless it appears beyond a reasonable doubt that the instructional error did not contribute to the jury's verdict. (*People v. Swain* (1996) 12 Cal.4th 593, 607 [49 Cal.Rptr.2d 390, 909 P.2d 994]; *People v. Smith* (1998) 62 Cal.App.4th 1233, 1238 [72 Cal.Rptr.2d 918].) "Such a reasonable doubt arises where, although the jury was instructed on alternate theories, there is no basis in the record for concluding that the verdict was based on a valid ground." (*People v. Smith, supra,* at p. 1238, citing *People v. Guiton* (1993) 4 Cal.4th 1116, 1122 [17 Cal.Rptr.2d 365, 847 P.2d 45].)

The jury was properly instructed on second degree murder based upon implied malice, and there is overwhelming evidence to support the murder conviction on that basis. The intoxicated defendant began by ignoring a stop sign and two red lights and by proceeding through the intersections at speeds up to 55 miles per hour, barely missing another vehicle. This was not his first experience driving under the influence of alcohol (DUI). His prior DUI conviction put him on notice that such driving poses a danger to human life. Nevertheless, as the three passengers in his car pleaded with defendant to pull over when a marked patrol car began pursuing him, he simply turned up the music and ignored them as he raced through residential streets at speeds up to 100 miles per hour. Defendant's flagrant disregard for the threat to human life ended when he failed to negotiate a 90-degree turn while traveling over 80 miles per hour. His car hit a guardrail, flipped over and crashed into a house. One of the passengers was killed and two were injured. There is no reasonable doubt that such conduct demonstrates a wanton and conscious disregard for human life, i.e., implied malice, that justifies a conviction of second degree murder. (*People v. Watson, supra,* 30 Cal.3d at pp. 300-301.)

But the fact remains that the jury was given an erroneous alternative, the second degree felony-murder rule, upon which to return a verdict of guilt. And the prosecutor used this theory to great advantage in closing argument, forcefully asserting that the jurors could "shorten [their] deliberations greatly because the felony murder is all you need to go to." It is conceivable that the jurors accepted this invitation and stopped deliberating after finding defendant guilty of second degree murder simply because he killed a human being while violating section 2800.3, an erroneous legal theory. In other words, it is conceivable that the jurors did not even attempt to determine whether the evidence supported a finding of implied malice. Nothing in the general verdict form rules out this possibility. (Cf. *People v. Swain, supra,* 12 Cal.4th at p. 607.)

Thus, despite overwhelming evidence that defendant is guilty of second degree murder, there simply is no legitimate basis in the record for us to conclude the verdict necessarily was based on the valid legal ground of implied malice. (Cf. *People v. Smith, supra,* 62 Cal.App.4th at p. 1238; *People v. Houts* (1978) 86 Cal.App.3d 1012, 1021 [150 Cal.Rptr. 589] ["we cannot hold that the error did not affect the verdict because we simply have no way of telling"].) Accordingly, the trial court's misinstructions on the elements of second degree felony murder require us to reverse defendant's murder conviction and remand the matter for retrial on that charge. (*People v. Swain, supra,* 12 Cal.4th at p. 607; *People v. Smith, supra,* at p. 1238.)

There is a lesson here, like one voiced long ago. Speaking for the Court of Appeal, Fifth Appellate District, in reversing a second degree murder conviction because the prosecutor sought and obtained erroneous instructions on

the second degree felony-murder rule, Justice George A. Hopper noted: "If the prosecution had elected to proceed only on the theory of second degree murder [rather] than felony murder, we would have no hesitation in concluding that a verdict of guilty would be clearly supported by the evidence. . . . [¶] The lesson to be learned is that the prosecutor should not proceed on an alternative theory of criminal responsibility for murder requiring instructions which may be relied upon by the jury, enabling it to be misled into substituting commission of a felony for the element of malice where the evidence is simply insufficient to establish that particular alternative. The use of a well aimed and finely honed blade, rather than the scattergun with its dangerous spray effect, is often the most effective method of assuring a successful and final victory." (*People v. Houts, supra,* 86 Cal.App.3d at pp. 1021-1022.)

Like the situation in *People v. Houts, supra,* 86 Cal.App.3d 1012, prosecuting defendant in this case on the legally erroneous theory of second degree felony murder "was unnecessary and resulted in reversible error." (*Id.* at p. 1022.)

## DISPOSITION

The conviction for second degree murder is reversed. Defendant's other convictions and special findings are affirmed. The sentences are vacated, and the matter is remanded to the trial court for further proceedings.

Davis, J., and Morrison, J., concurred.