11 Cal.Rptr.3d 114 (2004)
116 Cal.App.4th 1113
The PEOPLE, Plaintiff and Respondent,
v.
Brandon Charles WILLIAMS, Defendant and Appellant.
No. C042763
Court of Appeal, Third District
March 15, 2004
Review Granted June 9, 2004
*116 George L. Schraer, San Diego, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Senior Assistant Attorney General, Matthew L. Cate, Laura Wetzel Simpton and Maggy Krell, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication[*]
*115 SCOTLAND, P.J.
Late at night, while driving a car that was stolen in a carjacking, defendant Brandon Williams attempted to elude a peace officer who was following him. When defendant ran a stop light, the officer activated the patrol car's red lights and siren, and pursued him onto a freeway. Defendant turned off the lights of the stolen car and drove it at over 120 miles per hour in the dark, weaving in and out of traffic. In an off ramp, he lost control of the car, which rolled over and came to rest in a field. The car caught fire and Venus Foster, a passenger trapped in the front seat, was killed. Defendant, who was able to get out of the burning car, was found hiding nearby.
A jury convicted defendant of second degree murder (Pen.Code, § 187, subd. (a)) and causing the death of another while fleeing in a vehicle from a pursuing peace officer (Veh.Code, § 2800.3; further section references are to the Vehicle Code unless otherwise specified). The prosecutor tried the murder charge on two theories, implied malice and second degree felony murder based upon a violation of section 2800.2, driving "in a willful or wanton disregard for the safety of persons or property" while attempting to elude a pursuing peace officer. The verdict does not disclose which theory the jury adopted. Sentenced to a term of 15 years to life in state prison, defendant appeals.
In the published parts of this opinion, we reject defendant's contention that section 2800.2 employs an impermissible mandatory presumption. But we agree with defendant that his conviction for second degree felony murder, based upon his violation of section 2800.2, must be reversed because section 2800.2 is not an inherently dangerous felony for purposes of the felony-murder rule. As we will explain, section 2800.2 does not state a mandatory presumption; it simply establishes a rule of substantive law by setting forth the Legislature's definition of what qualifies as *117 a violation of that section. However, section 2800.2 is not a felony inherently dangerous to human life because its elements can be satisfied by conduct that does not necessarily pose a high probability of death. Consequently, section 2800.2 cannot serve as a basis for second degree felony murder. Although there is overwhelming evidence to support a finding of murder on the basis of implied malice, we must reverse the conviction because it is conceivable that it was based only on the erroneous theory of second degree felony murder.
In the unpublished parts of this opinion, we address defendant's other claims of error.

DISCUSSION

I
Section 2800.1 provides that when, with the intent to evade, the driver of a motor vehicle willfully flees or attempts to elude a pursuing peace officer's motor vehicle or bicycle under circumstances specified in section 2800.1, the person is guilty of a misdemeanor.[1]
Section 2800.2, subdivision (a), provides that when a person drives "in a willful or wanton disregard for the safety of persons or property" while fleeing or attempting to elude a pursuing peace officer in violation of section 2800.1, the person is subject to prosecution for either a felony or a misdemeanor. (§ 2800.2, subd. (a).)
In subdivision (b) of section 2800.2, the Legislature has specified that, "[f]or purposes of this section, a willful or wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more [specified traffic] violations ... occur, or damage to property occurs."
Defendant contends that subdivision (b) of section 2800.2 "employ[s] a constitutionally prohibited mandatory presumption" "by describing [the willful or wanton disregard for the safety of persons or property element] of the offense in terms of specific Vehicle Code violations...." We disagree.
A mandatory presumption tells the trier of fact that if a specified predicate fact has been proved, the trier of fact must find that a specified factual element of the charge has been proved, unless the defendant *118 has come forward with evidence to rebut the presumed connection between the two facts. (Ulster County Court v. Allen (1979) 442 U.S. 140, 157, 99 S.Ct. 2213, 60 L.Ed.2d 777, 792; People v. McCall (2004) 32 Cal.4th 175, 182, 8 Cal.Rptr.3d 337, 82 P.3d 351.) In criminal cases, a mandatory presumption offends constitutional principles of due process of law because it relieves the prosecutor from having to prove each element of the offense beyond a reasonable doubt. (Ulster County Court v. Allen, supra, 442 U.S. at p. 157, 99 S.Ct. at p. 2225, 60 L.Ed.2d at p. 792; People v. McCall, supra, 32 Cal.4th at p. 183-184, 8 Cal.Rptr.3d 337, 82 P.3d 351; People v. Roder (1983) 33 Cal.3d 491, 496-498, 189 Cal.Rptr. 501, 658 P.2d 1302.)
For example, in Carella v. California (1989) 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218, Eugene Carella was accused of grand theft for failure to return a rented car. Applying statutory presumptions, the trial court instructed the jury that (1) a person is presumed to have embezzled a vehicle if it is not returned within five days of the expiration of the rental agreement (§ 10855), and (2) the intent to commit theft by fraud is presumed if a person fails to return rented property to its owner within 20 days of demand (Pen.Code, § 484, former subd. (b)). Concluding that the instructions violated the Fourteenth Amendment, the United States Supreme Court explained: "These mandatory directions directly foreclosed independent jury consideration of whether the facts proved established certain elements of the offenses with which Carella was charged. The instructions also relieved the State of its burden of proof articulated in [In re Winship (1970) 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368], namely proving by evidence every essential element of Carella's crime beyond a reasonable doubt." (Carella v. California, supra, 491 U.S. at p. 266, 109 S.Ct. at p. 2421, 105 L.Ed.2d at p. 222; see also People v. Forrester (1994) 30 Cal.App.4th 1697, 1700-1702, 37 Cal.Rptr.2d 19.)
However, there is no impermissible mandatory presumption when a statute creates a rule of substantive law by defining in precise terms conduct that establishes an element of the offense as a matter of law. (People v. McCall, supra, 32 Cal.4th at pp. 185-186, 187-188, 8 Cal.Rptr.3d 337, 82 P.3d 351; People v. Dillon (1983) 34 Cal.3d 441, 474, 194 Cal.Rptr. 390, 668 P.2d 697.)
For example, former subdivision (f) of Health and Safety Code section 11383, which stated that possession of red phosphorous and iodine with the intent to manufacture methamphetamine "shall be deemed" to be possession of hydriodic acid with the intent to manufacture methamphetamine, did not create an unconstitutional mandatory presumption. It "simply created a rule of substantive law." (People v. McCall, supra, 32 Cal.4th at p. 188, 8 Cal.Rptr.3d 337, 82 P.3d 351.) Indeed, it "contained no presumption at all. Instead, [the statute] was nothing more than a definitional section that specified the conduct `deemed' criminal.... Substantive due process allows lawmakers broad power to select the elements of crimes, and to define one thing in terms of another." (Id. at p. 189, 8 Cal.Rptr.3d 337, 82 P.3d 351.)
Likewise, People v. Pinkston (2003) 112 Cal.App.4th 387, 5 Cal.Rptr.3d 274 held: "Subdivision (b) of Vehicle Code section 2800.2 does not state a mandatory presumption. Rather, it sets out the Legislature's definition of what qualifies as willful and wanton conduct under subdivision (a). Although Vehicle Code section 2800.2 uses the phrase `willful or wanton disregard for the safety of persons or property' to describe an element of reckless evading, the statute defines this element so that it may *119 be satisfied by proof of property damage or by proof of that the defendant committed three Vehicle Code violations. Thus, section 2800.2, subdivision (b) establishes a rule of substantive law rather than a presumption apportioning the burden of persuasion concerning certain propositions or varying the duty of coming forward with evidence. [Citation.] In other words, evasive driving during which the defendant commits three or more specified traffic violations is a violation of section 2800.2 `because of the substantive statutory definition of the crime' rather than because of any presumption. [Citation.] Since there is no presumption, due process is not violated. [Citation.]" (Id. at pp. 392-393, 5 Cal.Rptr.3d 274, orig. italics, review den. Dec. 17, 2003.)
We agree. Subdivision (b) of section 2800.2 bears no resemblance to the scheme considered in Carella v. California, supra, 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218. It simply defines the element of "a willful or wanton disregard for the safety of persons or property" as behavior that includes driving while fleeing or attempting to elude a pursuing peace officer, during which time three or more specified traffic violations occur or damage to property occurs. "[I]t is emphatically the role of the Legislature, within constitutional limits, to define offenses and prescribe punishments. [Citations.]" (People v. Penoli (1996) 46 Cal.App.4th 298, 306, fn. 6, 53 Cal.Rptr.2d 825.)
Because subdivision (b) of section 2800.2 establishes a rule of substantive law rather than a presumption that varies the burden of proof, we reject defendant's claim that the trial court erred by instructing the jury in accordance with the statute.

II
In another attack on his murder conviction, defendant contends the judgment must be reversed because the trial court erred by instructing the jury on the theory of second degree felony murder based upon a violation of section 2800.2, driving "in a willful or wanton disregard for the safety of persons or property" while fleeing or attempting to elude a pursuing peace officer. This is so, he argues, because section 2800.2 is not a felony inherently dangerous to human life. We agree.

A
Under the felony-murder rule, a homicide is second degree murder if it is committed in the perpetration or attempted perpetration of any felony that is inherently dangerous to human life. A felony is inherently dangerous to human life when, by its nature, it poses a "`"high probability"'" that it will result in death, i.e., it "`cannot be committed without creating a substantial risk that someone will be killed....'" (People v. Hansen (1994) 9 Cal.4th 300, 309, 36 Cal.Rptr.2d 609, 885 P.2d 1022; People v. Sanchez (2001) 86 Cal.App.4th 970, 975, 977, 103 Cal.Rptr.2d 809.) In determining whether a felony is inherently dangerous to human life, a court "looks to the elements of the felony in the abstract, `not the "particular" facts of the case,' i.e., not to the defendant's specific conduct. [Citation.]" (People v. Hansen, supra, 9 Cal.4th at p. 309, 36 Cal.Rptr.2d 609, 885 P.2d 1022, orig. italics; People v. Sanchez, supra, 86 Cal.App.4th at pp. 977-978, 103 Cal.Rptr.2d 809.)[2]
*120 Courts "look first to the primary element of the offense at issue, then to the `factors elevating the offense to a felony,' to determine whether the felony, taken in the abstract, is inherently dangerous to human life [citation], or whether it possibly could be committed without creating such peril. [Citations.] In this examination we are required to view the statutory definition of the offense as a whole, taking into account even nonhazardous ways of violating the provisions of the law which do not necessarily pose a threat to human life." (People v. Burroughs, supra, 35 Cal.3d at p. 830, 201 Cal.Rptr. 319, 678 P.2d 894.) "Thus, if dispositive elements of the statute may be established by conduct that does not endanger human life, it is not a felony inherently dangerous to human life." (People v. Sanchez, supra, 86 Cal.App.4th at p. 978, 103 Cal.Rptr.2d 809 (hereafter Sanchez).)
For example, Sanchez addressed whether section 2800.3 is an inherently dangerous felony. Section 2800.3, which like section 2800.2 involves flight from a pursuing peace officer, states: "Whenever willful flight or attempt to elude a pursuing peace officer in violation of Section 2800.1 proximately causes death or serious bodily injury to any person, the person driving the pursued vehicle, upon conviction, shall be punished by imprisonment in the state prison ... or by a fine ... or by both that fine and imprisonment."
Sanchez held that section 2800.3 is not an inherently dangerous felony because, in the abstract, the act of willfully fleeing from a peace officer can be committed without endangering human life, regardless of whether a violation of the statute typically is committed in a way that involves a high probability of death. (Sanchez, supra, 86 Cal.App.4th at p. 978, 980, 103 Cal.Rptr.2d 809.) Furthermore, the statutory factors elevating the offense to a felony are stated in the disjunctive and one of the factors does not necessarily involve a high probability of death  it only requires serious bodily injury, not a life-threatening injury. (Sanchez, supra, 86 Cal.App.4th at p. 979-980, 103 Cal.Rptr.2d 809.)
In contrast, relying in part on the reasoning in People v. Johnson (1993) 15 Cal.App.4th 169, 18 Cal.Rptr.2d 650 (hereafter Johnson), this court in People v. Sewell (2000) 80 Cal.App.4th 690, 95 Cal.Rptr.2d 600 (hereafter Sewell) held that section 2800.2 is an inherently dangerous felony for purposes of the felony-murder rule. Sewell reasoned: "`It would seem clear as a matter of logic that any felony whose key element is "wanton disregard" for human life necessarily falls within the scope of "inherently dangerous" felonies.' (Johnson, supra, 15 Cal.App.4th at p. 173, 18 Cal.Rptr.2d 650.)" (Sewell, supra, 80 Cal.App.4th at p. 694, 95 Cal.Rptr.2d 600, review den. Aug. 23, 2000.)
At first blush this makes sense, but the problem is that the language of section 2800.2 does not require a" `wanton disregard' for human life." It prohibits fleeing from a peace officer while driving with a "willful or wanton disregard for the safety of persons or property." (§ 2800.2, subd. (a), italics added.) In other words, driving with a willful disregard for the safety of property is enough.
Sewell agreed with Johnson that the Legislature's use of the disjunctive is of no significance because (1) "`giving the *121 statutory language involving "wanton disregard" for the safety of "persons or property" a commonsense construction, it appears the "wanton disregard" in question is total, rather than selective. That is, the disregard is for everything, whether living or inanimate,'" and (2) "`[a]ny high-speed pursuit is inherently dangerous to the lives of the pursuing police officers. In even the most ethereal of abstractions, it is not possible to imagine that the "wanton disregard" of the person fleeing does not encompass disregard for the safety of the pursuing officers. In short, it does not appear that the phrase "or property" may properly be construed to limit the mental state of the offender, and thus to make fleeing a pursuing police vehicle other than "inherently dangerous."' ([Johnson, supra,] 15 Cal.App.4th at p. 174, 18 Cal.Rptr.2d 650.)" (Sewell, supra, 80 Cal.App.4th at p. 696, 95 Cal.Rptr.2d 600.)
Even if we assume for purpose of discussion that a wanton disregard for human safety is the equivalent of a wanton disregard for human life and presents a high probability of death, there are several problems with the analysis in Sewell and Johnson.
First, the use of the disjunctive, i.e., the "willful or wanton disregard for the safety of persons or property," in subdivision (a) of section 2800.2 cannot be so readily discounted. As we explained in part I, ante, the Legislature has set forth in subdivision (b) of the statute a substantive definition of what constitutes willful or wanton disregard for the safety of persons or property within the meaning of subdivision (a). The definition unambiguously states that causing property damage alone is sufficient  willful or wanton disregard for the safety of persons or property includes "driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more [specified] violations ... occur, or damage to property occurs." (§ 2800.2, subd. (b), italics added.) In light of these explicit alternatives, one of which is concerned solely with damage to property, Sewell erred in agreeing with Johnson that "`the "wanton disregard" in question is total, rather than selective. That is, the disregard is for everything, whether living or inanimate.'" (Sewell, supra, 80 Cal.App.4th at p. 696, 95 Cal.Rptr.2d 600, quoting Johnson, supra, 15 Cal.App.4th at p. 174, 18 Cal.Rptr.2d 650.)
Second, the analysis in Sewell and Johnson ignores the fact that section 2800.2 does not require the "wanton" disregard for the safety of persons or property. Driving with a "willful" disregard for the safety of persons or property is enough. "Wanton" "connotes malice" (Black's Law Dict. (7th ed.1999) p. 1576, col. 2), "willful" does not.
Third, it does not take a "high-speed pursuit" (Sewell, supra, 80 Cal.App.4th at p. 696, 95 Cal.Rptr.2d 600) to violate section 2800.2. The statute, which requires a violation of section 2800.1, applies even if a driver is fleeing from a peace officer on a bicycle (§ 2800.1, subd. (b), see fn. 1, ante). Unless the pursuing peace officer has the superior athletic ability of Lance Armstrong, fleeing in a vehicle from an officer who is on a bicycle generally can be accomplished without dangerously high speeds on the driver's part. And if the driver willfully damages property in the process, he or she violates section 2800.2 without necessarily endangering anyone's life.
In cases where the driver is fleeing from an officer who is driving a motor vehicle, we can imagine a slow speed chase, akin to that involved in the pursuit of O.J. Simpson, in which while driving through a deserted commercial area, the fleeing driver decides to willfully do a little vandalism by taking out stop signs, mailboxes, or *122 other items of property along the way in a manner that willfully disregards the safety of the property but does not pose a high probability of death to anyone. Another example is a fleeing driver who gets out of sight of the pursuing officer and then slowly drives into a field of crops, tall wheat for example, to hide and, in doing so, destroys some of the crops  a violation of section 2800.2 that does not pose a high probability of death to anyone.
In other words, it cannot be said that, in the abstract, eluding or attempting to elude a pursuing peace officer's vehicle while driving in a willful disregard for the safety of property necessarily poses a high probability of death to someone.
Fourth, subdivision (b) of section 2800.2 specifies that "a willful or wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count under Section 12810 occur, or damage to property occurs." (Italics added.) Such traffic violations include, for example, operating a car with knowledge that the person's driving privilege has been suspended for using a vehicle to engage in an act of prostitution in a residential area (Pen.Code, § 647, subd. (b) & (k)(2), §§ 14601.1, subd. (a), 12810, subd. (i)); operating a vehicle, owned by the driver, while the vehicle is not registered (§§ 40001, subd. (b)(1), 12810, subds. (e), (g)(1)); and driving a car "while wearing glasses having a temple width of one-half inch or more if any part of such temple extends below the horizontal center of the lens so as to interfere with lateral vision" (§§ 23120, 12810, subd. (e)). In the abstract, the traffic violations identified in the preceding sentence can be committed while attempting to elude a pursuing peace officer, without posing a high probability of death to anyone.
Because, in the abstract, dispositive elements of the statute can be satisfied by conduct that does not necessarily pose a high probability of death, section 2800.2 is not a felony inherently dangerous to human life. Consequently, the trial court erred by instructing the jury that "[t]he unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs during the commission or attempted commission of or as the direct causal result of the crime of Vehicle Code section 2800.2 is murder of the second degree when the perpetrator had the specific intent to commit that crime."

B
Defendant's second degree murder conviction must be reversed unless it appears beyond a reasonable doubt that the trial court's instructional error on the elements of second degree felony murder did not contribute to the jury's verdict. (People v. Swain (1996) 12 Cal.4th 593, 607, 49 Cal.Rptr.2d 390, 909 P.2d 994; Sanchez, supra, 86 Cal.App.4th at pp. 980-981, 103 Cal.Rptr.2d 809; People v. Smith (1998) 62 Cal.App.4th 1233, 1238, 72 Cal.Rptr.2d 918.) "Such a reasonable doubt arises where, although the jury was instructed on alternate theories, there is no basis in the record for concluding that the verdict was based on a valid ground." (People v. Smith, supra, 62 Cal.App.4th at p. 1238, 72 Cal.Rptr.2d 918, citing People v. Guiton (1993) 4 Cal.4th 1116, 1122, 17 Cal.Rptr.2d 365, 847 P.2d 45.)
The jury was instructed properly on second degree murder based upon implied malice, and there is overwhelming evidence to support the murder conviction on that basis. Defendant, who had three passengers in his car, ran a red light and proceeded to weave in and out of traffic on *123 the highway in the dark, with his lights off, at a speed of over 120 miles an hour, while ignoring his passengers' impassioned pleas for him to stop. Defendant's blatant disregard for the threat to human life did not end until he failed to negotiate an off ramp and rolled the car, causing it to catch fire and killing one of the passengers. There is no reasonable doubt that such conduct demonstrates a wanton and conscious disregard for human life, i.e., implied malice, which justifies a conviction of second degree murder. (People v. Watson (1981) 30 Cal.3d 290, 300-301, 179 Cal.Rptr. 43, 637 P.2d 279.)
However, the fact remains that the jury was given an erroneous alternative, second degree felony murder based on section 2800.2, upon which to return a verdict of guilt. The prosecutor emphasized this theory in closing argument, stating that defendant was guilty of second degree murder if he intended to violate section 2800.2 and the commission of that crime caused the death of another human being. Thus, the prosecutor pointed out that under the instructions given, if the jury found defendant had committed three enumerated moving violations, then "it is presumed that he has a wanton and willful disregard for the safety of others," which would support a second degree felony-murder conviction.[3]
Based on the instructions given and the prosecutor's argument, it is conceivable that the jury stopped deliberating after finding defendant guilty of second degree murder because he killed a human being while violating section 2800.2, an erroneous legal theory, and thus the jury did not attempt to determine whether the evidence supported a finding of implied malice. Nothing in the general verdict form rules out this possibility, and there simply is no legitimate basis in the record for us to conclude that the verdict necessarily was based on the valid legal ground of implied malice. (Cf. People v. Swain, supra, 12 Cal.4th at p. 607, 49 Cal.Rptr.2d 390, 909 P.2d 994; People v. Smith, supra, 62 Cal.App.4th at p. 1238, 72 Cal.Rptr.2d 918; Sanchez, supra, 86 Cal.App.4th at p. 981, 103 Cal.Rptr.2d 809; People v. Houts (1978) 86 Cal.App.3d 1012, 1021, 150 Cal.Rptr. 589 ["we cannot hold that the error did not affect the verdict because we simply have no way of telling"].)
Accordingly, despite overwhelming evidence that defendant is guilty of second degree murder based on implied malice, the trial court's error in instructing the jury on the elements of second degree murder based upon the felony-murder rule requires us to reverse his murder conviction and to remand for a retrial on that charge. (People v. Swain, supra, 12 Cal.4th at p. 607, 49 Cal.Rptr.2d 390, 909 P.2d 994; Sanchez, supra, 86 Cal.App.4th 970, 980-981, 103 Cal.Rptr.2d 809; People v. Smith, supra, 62 Cal.App.4th at p. 1238, 72 Cal.Rptr.2d 918.)
Once again, we quote the astute observation of Justice Hopper in People v. Houts, supra, 86 Cal.App.3d 1012, 150 Cal.Rptr. 589. "The lesson to be learned" is that in their zeal to obtain convictions, prosecutors must be extremely careful to not advance an alternate theory of guilt that turns out to be erroneous; "[t]he use of a well aimed and finely honed blade, rather than the scattergun with its dangerous spray effect, is often the most effective method of assuring a successful and final victory." (Id. at pp. 1021-1022, 150 Cal. *124 Rptr. 589; see also, Sanchez, supra, 86 Cal.App.4th at p. 982, 103 Cal.Rptr.2d 809)

III-IV[**]

DISPOSITION
Defendant's conviction for violating section 2800.3 is affirmed. The sentence imposed but stayed on that count pursuant to Penal Code section 654 is vacated. Defendant's conviction and sentence for second degree murder are reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion.
I concur: ROBIE, J.
MORRISON, J.
I dissent to the reversal of the second degree murder charge. I concur in the remainder of the majority opinion.
The defendant, Brandon Williams, after being spotted driving a hijacked car, flees from a pursuing police officer. It is night. The police car is using its lights and siren, defendant turns off his lights and is weaving in and out of traffic at speeds over 120 miles per hour. He predictably loses control on a freeway off ramp, the car rolls over and his passenger, Venus Foster, is burned to death in the ensuing fire.
The prosecutor tried the murder charge on two theories: implied malice and second degree felony murder. A felony-murder instruction was given based on the established legal principle that Vehicle Code section 2800.2 (section 2800.2) is an inherently dangerous felony. Both theories are correct and each supports a murder conviction.
The majority, disagreeing with the holding of this court in People v. Sewell (2000) 80 Cal.App.4th 690, 95 Cal.Rptr.2d 600, and with People v. Johnson (1993) 15 Cal.App.4th 169, 18 Cal.Rptr.2d 650, holds that section 2800.2 is not an inherently dangerous felony.
I disagree. There is no reason to depart from the logic and the authority of People v. Sewell, supra, 80 Cal.App.4th 690, 95 Cal.Rptr.2d 600, and People v. Johnson, supra, 15 Cal.App.4th 169, 18 Cal.Rptr.2d 650. I will not repeat the entire reasoning of these cases. Suffice to say that the gist of their holdings is that the test to determine whether a felony is inherently dangerous is whether commission of the offense creates a "high probability of death," not whether there are "conceivable" ways of committing the offense that do not necessarily pose a threat to human life.
Fleeing from a pursuing peace officer while driving with a "willful or wanton disregard for the safety of persons or property" is analyzed in People v. Sewell, supra, 80 Cal.App.4th 690, at page 692, 95 Cal.Rptr.2d 600, as a total rather than a selective disregard for "everything, whether living or inanimate." (Id. at p. 696, 95 Cal.Rptr.2d 600.)
It is neither necessary nor appropriate to parse the language of the statute to find a conceivable manner in which this felony could possibly be committed and not be inherently dangerous, such as a hypothetical involving fleeing from a pursuing peace officer in an unregistered car, with a suspended driver's license, while wearing "terminator" style sunglasses, which can be drawn from the majority's analysis of section 2800.2, subdivision (b). Anyone who flees from a pursuing officer is creating an inherently dangerous situation.
Other felonies that have been held to be inherently dangerous could conceivably be committed, and frequently are, without posing a threat to human life, i.e., the *125 manufacture of methamphetamine, People v. James (1998) 62 Cal.App.4th 244, 74 Cal.Rptr.2d 7, maliciously burning a motor vehicle, People v. Nichols (1970) 3 Cal.3d 150, 89 Cal.Rptr. 721, 474 P.2d 673, and kidnapping, People v. Ford (1964) 60 Cal.2d 772, 795, 36 Cal.Rptr. 620, 388 P.2d 892.
I agree that if it was wrong to instruct on second degree felony murder, it was prejudicial. But it was not wrong; the instruction was supported by logic, precedent and justice.
NOTES
[*] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts III and IV.
[1] Subdivision (a) of section 2800.1 states: "Any person who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty of a misdemeanor if all of the following conditions exist: [¶] (1) The peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp. [¶] (2) The peace officer's motor vehicle is sounding a siren as may be reasonably necessary. [¶] (3) The peace officer's motor vehicle is distinctively marked. [¶] (4) The peace officer's motor vehicle is operated by a peace officer ... and that peace officer is wearing a distinctive uniform."

Subdivision (b) of section 2800.1 states: "Any person who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's bicycle, is guilty of a misdemeanor if the following conditions exist: [¶] (1) The peace officer's bicycle is distinctively marked. [¶] (2) The peace officer's bicycle is operated by a peace officer ... and that peace officer is wearing a distinctive uniform. [¶] (3) The peace officer gives a verbal command to stop. [¶] (4) The peace officer sounds a horn that produces a sound of at least 115 decibels. [¶] (5) The peace officer gives a hand signal commanding the person to stop. [¶] (6) The person is aware or reasonably should have been aware of the verbal command, horn, and hand signal, but refuses to comply with the command to stop."
[2] The California Supreme Court has explained that courts must look to the elements of the underlying felony in the abstract, rather than the particular facts of a case, in order to "resist ... unjustifiable bootstrapping" because there is a killing in every case where application of the felony-murder rule is considered and "the existence of the dead victim might appear to lead inexorably to the conclusion that the underlying felony is exceptionally hazardous." (People v. Burroughs (1984) 35 Cal.3d 824, 830, 201 Cal.Rptr. 319, 678 P.2d 894, overruled on other grounds in People v. Blakeley (2000) 23 Cal.4th 82, 89, 96 Cal.Rptr.2d 451, 999 P.2d 675.)
[3] The jury was instructed that four Vehicle Code sections may be applicable to this case: section 22349 [speeding]; section 22107 [turning without giving an appropriate signal and in an unsafe manner]; section 24409 [driving a car during darkness without its lights on]; and section 21453, subd. (a) [running a stop light].
[**] See footnote *, ante.